Harry J. Stoops for use of Albert Pick & Company, Plaintiff in Error, v. Lake View State Bank, Defendant in Error.

**Gen. No. 33,714.**

Opinion filed May 28, 1930. Rehearing denied June 10, 1930.

RINGER, WILHARTZ & HIRSCH, for plaintiff in error; SAMUEL E. HIRSCH and SIDNEY J. WOLF, of counsel.

HARRY R. HURLBUT and SAMUEL B. KING, for defendant in error.

MR. JUSTICE RYNER delivered the opinion of the court.

This is an appeal from a judgment of the municipal court of Chicago, discharging a garnishee.

On February 4, 1927, Albert Pick & Company recovered a judgment for $21,994.92 and costs against Harry J. Stoops. Execution was issued and returned, ''No property found and no part satisfied.'' A garnishee summons, together with interrogatories, was served upon the garnishee, Lake View State Bank. It filed an answer on March 1, 1927.

The answer set forth that, at the time of the service of the garnishment writ and at the time of the filing of the answer, Stoops was indebted to the garnishee in the sum of $48,500, as evidenced by four promissory notes, one for $5,000, due January 26, 1927, one for $11,500, due May 26, 1927, one for $12,000, due March 14, 1927, and the fourth for $20,000, maturing March 21, 1927; that the notes were secured by collateral described as follows:

| | |
|---|---:|
| 2 Promissory notes signed by Orvice La Bounty and D. E. Frost, 6%, for $10,000 each, due January 26, 1927........... | $20,000.00 |
| 2 Promissory notes signed by Harry J. Stoops and D. E. Frost, 6%, for $5,000 each, due December 20, 1926.......... | 10,000.00 |
| 36—$500 First Mortgage real estate gold bonds Winona Beach Apartments, due May 1, 1927........................ | 18,000.00 |
| 59—$100 First Mortgage real estate gold bonds, Winona Beach Apartments, due May 1, 1927........................ | 5,900.00 |
| | $53,900.00 |

and that the garnishee had no knowledge of the value of the collateral.

On October 8, 1927, the plaintiff was granted leave to contest the answer.

On November 28, 1927, pursuant to leave of court, the garnishee filed an amended answer in which it was alleged that Stoops was indebted to the garnishee in the sum of $43,500, as evidenced by one promissory note for $18,500, due November 8, 1927, one for $15,000, executed by the Standard Hotels Company (a concern controlled by Stoops, as disclosed by the evidence) and indorsed by Stoops, maturing November 21, 1927, and two notes for $5,000 each, and each maturing September 7, 1927. The answer further set forth that to secure the indebtedness Stoops had deposited as collateral with the garnishee:

"1. Promissory note signed by Orvice LaBounty, Harry J. Stoops and D. E. Frost, for $20,000 due February 14, 1928";

that the collateral was at the time of the service of the writ and at the time of the filing of the answer, in the possession of the garnishee; that the garnishee had no knowledge of the value of the collateral, and that Stoops paid $30,000 on account of the indebtedness since the filing of the first answer, but in order to secure this payment, the garnishee was obliged to surrender the Winona Beach Apartments bonds of the value of $23,900.

On January 31, 1928, the garnishee, by leave of court, filed a third amended answer. It set forth the substance of the first and second answers. Attached to it were a number of exhibits.

On February 23, 1928, by agreement of the parties, an order was entered referring the cause to William A. Doyle to hear evidence and report his conclusions as to the value, on April 22, 1927, of the bonds de-

scribed in paragraphs 12 and 13 of the second amended answer of the garnishee. Although the abstract makes no mention of the paragraphs referred to, we assume that the bonds in question were the Winona Beach Apartments bonds, of the face value of $23,900. The master filed a report, in which he found the value of the bonds, on April 22, 1927, to be at least $21,510, without the interest coupons. The report was approved by the court.

At the conclusion of the trial the court made certain findings of fact which we consider to be supported by the evidence and sufficient to present the issues of law controlling the disposition of the cause. The first finding was that at the date of the service of the garnishment summons, the garnishee had in its possession the collateral described in its first answer; that prior to November 28, 1927, the date of the filing of its second answer, the garnishee accepted a promissory note for $20,000, due February 14, 1928, executed by Orvice LaBounty, D. E. Frost and Harry J. Stoops, in lieu of the two promissory notes for the sum of $10,000 each, maturing January 26, 1927, and signed by Orvice LaBounty and D. E. Frost, and that prior to November 28, 1927, the garnishee accepted two promissory notes executed by Stoops and Frost for $5,000 each, due September 7, 1927, in lieu of the two notes for like amounts, executed by the same parties, and due December 20, 1926.

The second finding was that the bonds of the Winona Beach Apartments were paid in full, with interest, on May 12, 1927, at which time their fair cash value was $24,736.50.

The third finding was that the securities described in the answer of the garnishee, filed on January 31, 1928, were of a value of $5,400 in excess of the amount owed by the judgment debtor to the garnishee on the date of the service of the garnishment summons.

The fifth finding was that, on April 22, 1927, the garnishee released to the judgment debtor the Winona Beach Apartments bonds.

The sixth finding was that the garnishee "made additional loans to the judgment debtor as late as January, 1928."

These findings were given at the request of the plaintiff. It also submitted a finding numbered four which was refused. The court did not err in refusing it. The plaintiff also requested the trial court to hold certain propositions as the law controlling the decision of the case. They were all refused. It is deemed unnecessary to quote or state the substance of them because we are of the opinion that the trial court arrived at the correct conclusion and that the rights of the parties are governed by the garnishment statute.

Section 21 of the Garnishment Statute, Cahill's St. ch. 62, ¶ 21, provides that:

"When it shall appear that such goods, chattels, choses in action, or effects in the hands of a garnishee are mortgaged, or pledged, or in any way liable for the payment of a debt to him, the plaintiff may be allowed, under an order of the court or justice of the peace, for that purpose, to pay or tender the amount due to the garnishee; and he shall thereupon deliver the goods, chattels, choses in action and effects, in the manner before provided, to the officer who holds the execution.

Section 24 of the same statute provides as follows:

"When it shall appear that any garnishee has in his hands, or under his control, any goods, chattels, choses in action or effects, belonging to or which he is bound to deliver to the defendant, with or without condition, the court or justice of the peace may make any and all proper orders in regard to the delivery thereof to the proper officer, and the sale or disposition of the same, and the discharging of any lien thereon, and may authorize the garnishee to sell any

such property, or collect any choses in action, and account for the proceeds thereof; or, if the proceeding be in a court of record, the court may appoint a receiver to take possession and sell, collect or otherwise dispose of the same, and make all orders in regard thereto which may be necessary or equitable between the parties.''

In the instant case the plaintiff made no attempt to comply with either one of these sections. Its counsel say in their briefs that they ''offered in open court several times to pay the defendant in error (the garnishee) the balance owed by the judgment debtor, provided that the defendant in error would produce all of the collateral held by the defendant in error at the date it was served with the garnishment writ.''

The only evidence of any tender is a colloquy between court and counsel at the conclusion of the trial as follows:

''Mr. Wolf: It doesn't have to buy it at that price, but we can come in and we can say, we want to pay the $48,500, and we want the collateral.

The Court: You have not done it.

Mr. Wolf: We can do it right now.

The Court: But you are not doing it.

Mr. Wolf: We are willing to do it, but the evidence says the collateral is out of their hands. We are willing to pay the $48,500.

The Court: If you came in with some offer to pay $48,500 and the Court entered a rule on them to bring in this collateral and deposit it here so the exchange could be made, and it appears in any such proceeding as that that they have disposed of it, I could then ascertain the value of that collateral and charge them with the difference, but I don't think I am at liberty to—

Mr. Wolf: I intended originally to make a tender of $48,500 with interest, and then after looking up the authorities I find that a tender is not necessary where

it appears that it absolutely would be useless to make such a tender, as in this case. They have released the bonds, and the evidence shows that those bonds have all been duly canceled."
and again:

"Mr. Wolf: I explained to the Court, in my argument, that we were willing to tender the amount of $48,500, upon receiving the collateral—

The Court: I don't know how to give it to you, in the state of the record.

Mr. Wolf: I want to state right now that we are still willing to pay the $48,500, plus interest, upon receiving all the collateral described in the defendant garnishee's answer."

It is evident that sections 21 and 24 of the Garnishment Act were designed to give remedies to a judgment creditor against a pledgee of property of the judgment debtor which he would not otherwise have. In the case at bar the garnishee, being a pledgee, owed no obligation to the judgment creditor other than that imposed by the statute. Until the judgment creditor invoked the provisions of the statute, the garnishee had the right to protect itself by accepting full or partial payment of the indebtedness owed. Until payment was made it was not obliged to sell the collateral or foreclose its lien if either was likely to result in a financial loss to it.

The garnishee filed its first answer on March 1, 1927, in which it disclosed the collateral held by it as pledgee, including the $23,900 par value of bonds of the Winona Beach Apartments. The other collateral consisted of notes past due. The bonds were due May 1, 1927. They were surrendered on April 22, 1927, upon proper tender and demand, to Stoops. As we construe the garnishment statute, it does not permit dilatory tactics on the part of a judgment creditor. He has no right to wait indefinitely before availing himself of his rights under the statute. Otherwise the garnishee

could be compelled to hold collateral that was depreciating in value and to refuse tenders of payment from the judgment debtor, until the judgment creditor saw fit to proceed to enforce his remedies under the statute. The plaintiff had ample opportunity to protect itself but never undertook, at any time, to avail itself of its rights under the statute.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

WILSON, P. J., and HOLDOM, J., concur.